1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF TEXAS
2          HOUSTON DIVISION

3  UNITED STATES OF AMERICA      .  CR. NO. H-16-9-1
                                 .  HOUSTON, TEXAS
4  VS.                           .
                                 .  JANUARY 19, 2016
5  MOISES ABRAHAM MILLAN ESCOBAR .  1:30 P.M. to 2:14 P.M.

6

7            TRANSCRIPT of REARRAIGNMENT
        BEFORE THE HONORABLE GRAY H. MILLER
8            UNITED STATES DISTRICT JUDGE

9

10 <u>APPEARANCES</u>:

11 FOR THE GOVERNMENT:          MR. JEREMY R. SANDERS
                               MS. AISLING O'SHEA
12                             U.S. Department of Justice
                               Criminal Division
13                             1400 New York Ave, NW
                               Bond Building
14                             Washington, D.C.  20530

15                             MR. JOHN P. PEARSON
                               MR. ROB JOHNSON
16                             U.S. Attorney's Office
                               1000 Louisiana
17                             Suite 2300
                               Houston, Texas  77002
18

19 FOR THE DEFENDANT:           MR. KIRBY BEHRE
                               Miller & Chevalier
20                             655 15th St, NW
                               Suite 900
21                             Washington, D.C.  20005-5701

22                             MR. LAWRENCE D. FINDER
                               Baker & McKenzie LLP
23                             700 Louisiana
                               Suite 3000
24                             Houston, Texas  77002

25 Proceedings recorded by mechanical stenography, transcript
   produced by computer-aided transcription.

APPEARANCES CONTINUED

OFFICIAL COURT REPORTER:        MS. KATHY L. METZGER
                                U.S. Courthouse
                                515 Rusk
                                Room 8004
                                Houston, Texas   77002
                                713-250-5208

                    P R O C E E D I N G S

1          *THE COURT:*  Good afternoon.  Thank you.  Please have a
2   seat.

3          All right.  We're here on Criminal Case 16-9,
4   United States of America versus Moises Abraham Millan Escobar.
5   Who is here for the government?

6          *MR. SANDERS:*  Good afternoon, Your Honor.  Jeremy
7   Sanders, trial attorney with the Criminal Division of the
8   Department of Justice.  Here with me, colleagues John Pearson
9   and Robert Johnson of the U.S. Attorney's Office for the
10  Southern District of Texas, and my colleague from Washington,
11  Aisling O'Shea.

12         *THE COURT:*  All right.  Good afternoon to all of you.

13         And for the defendant?

14         *MR. FINDER:*  Good afternoon, Judge.  Larry Finder,
15  local counsel for Mr. Millan, the defendant.  Lead counsel,
16  Mr. Kirby Behre from the Miller Chevalier law firm in
17  Washington, D.C.

18         *THE COURT:*  All right.

19         *MR. BEHRE:*  Good afternoon, Your Honor.

20         *THE COURT:*  Good afternoon.  And the defendant is also
21  present.

22         *THE DEFENDANT:*  Yes.

23         *THE COURT:*  All right.  This is an initial appearance
24  and as I understand it, a rearraignment, so if y'all want to

```
 1   come forward, please.
 2          THE INTERPRETER:  Good afternoon, Your Honor.  If I
 3   may, the defendant speaks English, but I will just stand by, if
 4   he needs me.
 5          THE COURT:  That's fine.  That's fine.  All right.
 6          All right, sir.  It's my duty to inform you that
 7   you have been charged in a criminal information with conspiracy
 8   to violate the Foreign Corrupt Practices Act.  Are you aware of
 9   the charge in Count 1 of the information that is pending
10   against you?
11          THE DEFENDANT:  Yes, Your Honor.
12          THE COURT:  All right.  And in order for you to be
13   convicted of that offense, the government has to prove the
14   following three things beyond a reasonable doubt:  First of
15   all, that you and at least one other person made an agreement
16   to violate the Foreign Corrupt Practices Act as charged in the
17   information; secondly, that you knew the unlawful purpose of
18   the agreement and that you joined in it willfully, that is,
19   with the intent to further the unlawful purpose; and, third,
20   that one of the conspirators during the existence of this
21   conspiracy knowingly committed at least one of the overt acts
22   described in the information in order to accomplish some object
23   or purpose of the conspiracy.
24          Do you understand the government has to prove
25   each of those things beyond a reasonable doubt for you to be
```

1 convicted of the offense that's alleged in Count 1 of the

2 information?  Do you understand that?

3     *THE DEFENDANT:*  Yes, Your Honor.

4     *THE COURT:*  All right.  Now, if you are convicted, the

5 statutory maximum penalty is five years imprisonment and a fine

6 of $250,000 or twice the pecuniary gain or loss.  Do you

7 understand that's the maximum penalty?

8     *THE DEFENDANT:*  Yes, Your Honor.

9     *THE COURT:*  The Court would also assess a 100-dollar

10 special assessment which you would be required to pay.  Do you

11 understand that?

12     *THE DEFENDANT:*  Yes, Your Honor.

13     *THE COURT:*  All right.  And this count also carries a

14 maximum term of three years of supervised release.  Do you

15 understand what supervised release is?

16     *THE DEFENDANT:*  Yes, Your Honor.

17     *THE COURT:*  All right.  And you understand it carries

18 three years of supervised release after you're released from

19 prison?  Do you understand that?

20     *THE DEFENDANT:*  Yes, Your Honor.

21     *THE COURT:*  All right.  Let's see.  Is the defendant

22 willing to waive the formal reading of the information at this

23 time?

24     *MR. FINDER:*  Yes, sir.

25     *THE COURT:*  All right.  Thank you.

1          All right.  Sir, you have certain rights.  I'm
2     sure your counsel has explained them to you.  You have the
3     right to remain silent in this case.  You also have a right to
4     counsel.  I understand that you have retained counsel to
5     represent you in this case; is that correct?
6          *THE DEFENDANT:*  Yes, Your Honor.
7          *THE COURT:*  All right.  And if you were not able to
8     afford counsel to represent you in this case, then the Court
9     would appoint counsel to represent you and that counsel would
10    represent you throughout the case without any charge to you.
11    Do you understand that?
12         *THE DEFENDANT:*  Yes, Your Honor.
13         *THE COURT:*  All right.  Now, I understand that there
14    has been an agreement with respect to bond in this case,
15    pretrial release?
16         *MR. SANDERS:*  That's correct, Your Honor.
17         *THE COURT:*  All right.  And it's a 25,000-dollar
18    unsecured bond; is that correct?
19         *MR. SANDERS:*  Yes, Your Honor.
20         *THE COURT:*  With the standard conditions:  Travel
21    restricted to the Southern District of Texas.  Let's see, he's
22    supposed to turn in his passport.  Does he --
23         *MR. SANDERS:*  That's correct, Your Honor.  And I
24    believe we would have -- the agreement is for the defendant to
25    report to the case agent on this case as opposed to Pretrial

1  Services and would clear any -- give Your Honor notification of
2  any travel outside of the district.
3       THE COURT:  All right.  Is that correct?
4       MR. FINDER:  It is correct, Judge, except for the
5  standard condition of seeking employment.  The defendant is
6  currently on a visitor's visa.  So it would be illegal for him
7  to get employment.
8       THE COURT REPORTER:  Can he get to a microphone?
9       THE COURT:  Okay.
10      MR. FINDER:  It would be illegal for him to get
11 employment.
12      THE COURT:  All right.  So we will delete the standard
13 condition of seeking employment.  All right.  That takes care
14 of all of that.
15           Sir, it's my understanding that you wish to enter
16 a plea of guilty to Count 1 of the information; is that
17 correct?
18      THE DEFENDANT:  Yes, Your Honor.
19      THE COURT:  All right.  There is one more thing I need
20 to take care of, and that is, the waiver of indictment.  You're
21 here before the Court on what's called a criminal information.
22 You have the right in this case to be indicted by a federal
23 grand jury on this charge.  Do you understand that right?
24      THE DEFENDANT:  Yes, Your Honor.
25      THE COURT:  All right.  And have you discussed this

1    with your counsel?

2              *THE DEFENDANT:*  Yes, I did.

3         *THE COURT:*  All right.  And is it my understanding --

4    is my understanding correct that you wish to waive your right

5    to be indicted by a federal grand jury in this case and proceed

6    on the basis of the criminal information; is that correct?

7              *THE DEFENDANT:*  Yes, Your Honor.

8         *THE COURT:*  All right.  And have you discussed that

9    with your counsel?

10             *THE DEFENDANT:*  Yes, I did.

11        *THE COURT:*  And, counsel, is it my understanding that

12   you think it's in your client's best interest to waive

13   indictment and proceed on the basis of the information?

14        *MR. FINDER:*  Yes, sir, with a minor correction to the

15   waiver form.  I believe it has him pleading to Foreign Corrupt

16   Practices Act, and it's actually 18 U.S.C. 371, conspiracy to

17   commit the Foreign Corrupt Practices Act violation.

18             *THE COURT:*  All right.

19        *MR. FINDER:*  If we would make that interlineation.

20             *THE COURT:*  Fine.  That would be good.

21        *MR. SANDERS:*  And, Your Honor, one further proceeding

22   before we proceed to the plea, is I believe Your Honor has an

23   unopposed motion to seal the courtroom, the proceedings, and

24   delay docketing.

25             *THE COURT:*  Yes.  That was sitting here on the bench.

1        *MR. SANDERS:* Okay. My apologies. I just want to

2 make sure.

3        *THE COURT:* I've already covered that. I'm sorry.

4 Okay. Yes, I'll grant that.

5        All right. I've received a written waiver of

6 indictment that's been executed by the defendant and his

7 counsel, and I find that the defendant has knowingly and

8 intelligently waived his right to indictment in this case and

9 wishes to proceed on the basis of the criminal information and

10 the Court accepts the defendant's waiver of indictment.

11        All right, sir. It's my understanding that you

12 wish to enter a plea of guilty to Count 1 of the information

13 that's pending against you; is that right?

14        *THE DEFENDANT:* Yes, that's right, Your Honor.

15        *THE COURT:* All right. Before I can accept a guilty

16 plea from you, I have to ask you certain questions that you

17 must answer under oath. I need to be sure that your plea of

18 guilty is voluntary, entered into freely and without any

19 coercion. I need to be sure that your plea is informed,

20 entered with a clear understanding of the consequences of

21 pleading guilty and with an understanding of all of the

22 significant legal rights that you are giving up when you plead

23 guilty. I also need to be satisfied that you are, in fact,

24 guilty of this charge.

25        So, would you please raise your right hand and be

1  placed under oath.

2  *(Moises Abraham Millan Escobar, defendant, sworn.)*

3  *THE COURT:* All right. Thank you. You understand

4  that you've now been placed under oath and that if you answer

5  any of my questions falsely, your answers could later be used

6  against you in another prosecution for perjury, that is, for

7  making a false statement under oath? Do you understand that?

8  *THE DEFENDANT:* Yes, I understand, Your Honor.

9  *THE COURT:* All right. It's very important that you

10  listen carefully to all of the questions that I ask you and

11  that you give me truthful answers to all of my questions. Will

12  you do that?

13  *THE DEFENDANT:* Yes, I will do that.

14  *THE COURT:* All right. Tell me your full name,

15  please.

16  *THE DEFENDANT:* Moises Abraham Del Valle Millan

17  Escobar.

18  *THE COURT:* All right. And how old are you?

19  *THE DEFENDANT:* 32 years old.

20  *THE COURT:* All right. How far in school did you go?

21  *THE DEFENDANT:* I'm a mechanical engineer. I have a

22  five-year degree.

23  *THE COURT:* And where did you obtain that?

24  *THE DEFENDANT:* In Venezuela.

25  *THE COURT:* All right. And are you citizen of

1  Venezuela?

2            THE DEFENDANT:  Yes.

3        THE COURT:  All right.  Are you able to read and write

4  the English language?

5            THE DEFENDANT:  Yes.  Yes.  Yes, I think so, yeah.

6        THE COURT:  All right.  And we do have a Spanish

7  interpreter standing by in the event that you have any

8  difficulty; is that right?

9            THE DEFENDANT:  Thank you.  Yes.

10        THE COURT:  And you'll let me know if you have any

11  difficulty as we go along?

12            THE DEFENDANT:  I will let you know.  Thank you.

13        THE COURT:  All right.  Have you ever been treated for

14  mental illness or psychological problems of any kind?

15            THE DEFENDANT:  No, Your Honor.

16        THE COURT:  Are you addicted to any drugs?

17            THE DEFENDANT:  No, Your Honor.

18        THE COURT:  Are you sick today in any way that would

19  prevent you from understanding what is happening here?

20            THE DEFENDANT:  No, Your Honor.

21        THE COURT:  All right.  Have you taken any medication,

22  either over-the-counter medication or prescription medication

23  in the last few days or today?

24            THE DEFENDANT:  Just Nexium for my stomach that's all.

25            THE COURT:  All right.  Did you take that today?

1          *THE DEFENDANT:* Yes.

2          *THE COURT:* All right. Does that have any impact on

3    your ability to comprehend and understand what's happening

4    here?

5          *THE DEFENDANT:* No, I understand completely.

6          *THE COURT:* All right. Your mind is clear?

7          *THE DEFENDANT:* Yeah.

8          *THE COURT:* All right. Have you had any illegal drugs

9    or alcohol in the last few days or today?

10         *THE DEFENDANT:* No, never.

11         *THE COURT:* All right. Are you presently under the

12    influence of any drug or alcohol?

13         *THE DEFENDANT:* No.

14         *THE COURT:* All right. Have you had enough time to

15    talk to your counsel in this case?

16         *THE DEFENDANT:* Yes.

17         *THE COURT:* And are you satisfied with your attorneys?

18         *THE DEFENDANT:* Completely.

19         *THE COURT:* All right. Do you need to ask them any

20    questions or get any advice from them before we go on?

21         *THE DEFENDANT:* No, Your Honor.

22         *THE COURT:* All right. During the course of the

23    hearing if at any point you need to ask your attorneys a

24    question or get advice from them, you can do that prior to

25    answering my questions. Do you understand?

1       *THE DEFENDANT:*  Yes, I understand, Your Honor.

2       *THE COURT:*  All right.  Counsel, have you had enough

3  time to investigate the law and the facts of your client's

4  case?

5       *MR. BEHRE:*  Yes, Your Honor.

6       *THE COURT:*  All right.  And are you confident that

7  your client understands the charges against him and the range

8  of punishment he faces in this case?

9       *MR. BEHRE:*  Yes, Your Honor.

10      *THE COURT:*  All right.  And has he been able to fully

11 cooperate with you?

12      *MR. BEHRE:*  Very much so.

13      *THE COURT:*  All right.  And in your opinion, is he

14 mentally competent to enter a plea of guilty in this case?

15      *MR. BEHRE:*  Absolutely.

16      *THE COURT:*  All right.  Thank you.

17          The Court finds that the defendant knowingly,

18 voluntarily, intelligently, and with the advice of his

19 attorneys seeks to enter a plea of guilty.

20          Now, before I can accept a plea of guilty from

21 you, I need to make sure that you understand your legal rights

22 that you are giving up when you plead guilty.  First of all,

23 you have the right, if you wish, to plead not guilty to these

24 charges.  And if you were to plead not guilty, then you would

25 be entitled to have a trial on these charges.  Do you

1   understand that?

2         THE DEFENDANT:  Yes, I understand, Your Honor.

3         THE COURT:  All right.  And if you had a trial, you

4   would be tried by a jury of 12 citizens from this district or

5   by the judge without a jury, if everyone agreed to that.  Do

6   you understand that?

7         THE DEFENDANT:  Yes, I understand, Your Honor.

8         THE COURT:  All right.  And at this trial, you would

9   be entitled to be represented by an attorney, either one

10  retained by you or if you could not afford an attorney, one

11  appointed by the Court to represent you without charge.  Do you

12  understand that?

13        THE DEFENDANT:  Yes, I understand, Your Honor.

14        THE COURT:  Now, at this trial the burden would be on

15  the government to prove your guilt beyond a reasonable doubt on

16  each charge against you, but you would have no burden to prove

17  that you were innocent.  Because under our system of justice,

18  you are presumed to be innocent.  Do you understand the

19  presumption of innocence?

20        THE DEFENDANT:  Yes, I understand, Your Honor.

21        THE COURT:  Now, in order to prove your guilt beyond a

22  reasonable doubt, the government would call witnesses, and they

23  would appear and testify here in open court under oath.  You

24  and your attorneys would see and hear all of these witnesses

25  and then they would be allowed to ask the witnesses questions

1 on your behalf.  Do you understand that?

2     *THE DEFENDANT:*  Yes, I understand, Your Honor.

3     *THE COURT:*  Now, you would have no obligation to

4 present any evidence or to call any witnesses.  However, you

5 would have the right to do so if you wanted to, and that would

6 include the right to subpoena witnesses, that is, to require

7 them to come into court and testify on your behalf.  Do you

8 understand that right?

9     *THE DEFENDANT:*  Yes, Your Honor.

10     *THE COURT:*  During this trial you would also have the

11 right to remain silent, because no one can compel you to be a

12 witness against yourself.  And if you chose to exercise your

13 right to remain silent, it could not be held against you.  In

14 fact, you would have the right to have the jury instructed that

15 they could not use your silence as any evidence of your guilt

16 in this case.  Do you understand the right to remain silent?

17     *THE DEFENDANT:*  I understand, Your Honor.

18     *THE COURT:*  Now, the fact that you chose to present

19 evidence of any kind during the course of the trial would never

20 change the burden of proof.  That burden would remain on the

21 government until the very end of the case.  And at this trial,

22 you could not be convicted unless every member of the jury

23 found that you were guilty beyond a reasonable doubt.  In other

24 words, the verdict would have to be unanimous by all 12 members

25 of the jury.  Do you understand that?

1       *THE DEFENDANT:*  Yes, I understand.

2       *THE COURT:*  Now, you understand that if you plead

3  guilty today and I accept your plea, that you will be convicted

4  and you will not have a trial?  Do you understand that?

5       *THE DEFENDANT:*  I understand, Your Honor.

6       *THE COURT:*  Also by pleading guilty today, you are

7  giving up the right to have the facts that are pleaded in the

8  information or that affect your sentence proven to a jury or

9  proven beyond a reasonable doubt.  Do you understand that?

10       *THE DEFENDANT:*  Yes, Your Honor.

11       *THE COURT:*  All right.  You're also giving up the

12  right to make a number of arguments later on to try and get

13  your conviction set aside or your sentence set aside or

14  reduced, arguments that you could have made had you gone to

15  trial and been convicted rather than pleading guilty.  Do you

16  understand that?

17       *THE DEFENDANT:*  Yes, Your Honor.

18       *THE COURT:*  For example, you could not come forward

19  later and argue that there were defects in the way that you

20  were investigated, arrested, or prosecuted in order to

21  challenge your conviction or your sentence.  You would give up

22  the right to claim that you were subjected to an illegal search

23  and seizure, that you gave an unconstitutional confession, or

24  that your right to a speedy trial was violated.  Now, this is

25  not a complete list, just a few examples, but I want you to

clearly understand that if you plead guilty and I accept your plea, that you will not be able to raise these or other defenses later on to try and attack your conviction or your sentence. Do you understand that?

*THE DEFENDANT:* Yes, I understand, Your Honor.

*THE COURT:* All right. So you understand that by entering a plea of guilty today, if I accept your plea, that you are giving up your right to a trial and all of these other legal rights that I have just explained to you; is that correct?

*THE DEFENDANT:* Yes, that's correct.

*THE COURT:* All right. Now, we've established that you are a citizen of Venezuela.

*THE DEFENDANT:* Yes.

*THE COURT:* And you're here on a visitor's visa, I take it?

*THE DEFENDANT:* Yes. Correct.

*THE COURT:* All right. This is a felony offense. And I do not know what effect this may have on your ability to remain here in this country, but it may have immigration consequences. And I assume you've discussed this with your lawyers. I don't know what those consequences may be. But you understand that there may, in fact, be immigration consequences and you could be deported from this country and not allowed to reenter the country. Do you understand that?

1    *THE DEFENDANT:* I understand that, Your Honor.

2    *MR. FINDER:* Your Honor, for the record, the defendant

3 has engaged immigration counsel and has discussed this with

4 immigration counsel.

5    *THE COURT:* All right. Very good. All right. I just

6 want you to be aware that there are significant potential

7 immigration consequences, but I'm not advising you about that.

8 But you're aware of that?

9    *THE DEFENDANT:* Yes, I'm aware. Thank you.

10    *THE COURT:* All right. And we have discussed before

11 the charge against you in Count 1 of the information and we

12 talked about the maximum penalty. I want to discuss for a

13 moment with you supervised release. You mentioned that you

14 understand what supervised release is. I want to be clear,

15 supervised release is what happens after you are released from

16 prison, and it contains certain conditions. Your supervised

17 release requires you to comply with certain conditions. If you

18 do not comply with the conditions of your supervised release,

19 then your supervised release could be revoked, you could be

20 sent back to federal prison for up two additional years in

21 prison, without any credit for the time that you already served

22 on supervised release before you committed the violation. Do

23 you understand that?

24    *THE DEFENDANT:* Yes, I understand, Your Honor.

25    *THE COURT:* All right. Also, if you violate your

conditions of supervised release and I revoke it, I can impose another term of supervised release after you serve the prison time on the supervised release violation.  Now, if you're convicted of another crime, you may be sentenced to additional years in prison and other punishment, depending upon what the crime is.  And I can run the time, the jail time that I give you on the supervised release violation in addition to and not concurrently with the jail time on the new crime.  Do you understand that?

    *THE DEFENDANT:*  Yes, I understand.

    *THE COURT:*  All right.  Now, since you are not a citizen of the United States, you may be deported after you are released from prison, and your period of supervised release would become inactive.  If you are deported, it would be a condition of your supervised release that you may not illegally reenter the United States.  Another condition is that if you do come back to the United States, either legally or illegally, then you have to immediately report to the probation department and tell them that you are here.  At that point your supervised release becomes active.  If you come back to the United States, legally or illegally, and you fail to report to probation, that would be a violation of your supervised release.  And I can and I will revoke your supervised release and send you back to prison on this charge.  Do you understand that?

    *THE DEFENDANT:*  Yes, I understand, Your Honor.

1        *THE COURT:* Also, if you were to illegally reenter the

2 United States, the government may charge you with a separate

3 felony of illegally reentering the United States, which could

4 carry significant additional jail time. Do you understand?

5        *THE DEFENDANT:* I understand, Your Honor.

6        *THE COURT:* All right. Finally, there is no parole in

7 the federal prison system, and any prison sentence that you

8 receive in this case will not be shortened by parole. Do you

9 understand that?

10        *THE DEFENDANT:* Yes, I understand.

11        *THE COURT:* All right. So you clearly understand the

12 nature of the charges that are pending against you and the

13 range of punishment you face in this case; is that correct?

14        *THE DEFENDANT:* Yes, that's correct.

15        *THE COURT:* All right. Thank you. All right.

16 Counsel, I understand that we do have a written plea agreement

17 in this case; is that right?

18        *MR. SANDERS:* That's correct, Your Honor.

19        *THE COURT:* All right. And this plea agreement is

20 being offered pursuant to Rule 11(c)(1)(A) and (B) of the

21 Federal Rules of Criminal Procedure.

22        Mr. Sanders, could you for the benefit of the

23 record please summarize the essential terms of the plea

24 agreement.

25        *MR. SANDERS:* Certainly, Your Honor.

1        Under the terms of the plea, the defendant -- the

2  plea agreement, the defendant has agreed to plead guilty, as

3  Mr. Finder noted, to Count 1 of the information, which is a

4  conspiracy to violate the Foreign Corrupt Practices Act, in

5  violation of 18 U.S.C. Section 371.

6        The United States agrees at sentencing not to

7  oppose the defendant's anticipated request for a three-level

8  downward departure pursuant to the Sentencing Guidelines,

9  should the defendant accept responsibility, as contemplated by

10  the plea agreement and the guidelines.

11        The parties also understand that the agreement

12  carries the potential for the government to make a motion for a

13  downward departure under Section 5K1.1 of the Sentencing

14  Guidelines, provided that the defendant provides substantial

15  assistance.

16        And, finally, the plea agreement includes this

17  district's standard appellate waiver, which does allow for a

18  collateral attack on the basis of an ineffective assistance of

19  counsel.

20        *THE COURT:*  All right.

21        *MR. SANDERS:*  And, Your Honor, just -- I apologize.

22  It's very possible that this was covered earlier.  I just want

23  to make sure out of an abundance of caution that the defendant

24  understands.  I recall Your Honor going through the right

25  against compelled self-incrimination.  But that the defendant

understands he has the right to testify should he wish to proceed to trial. And I apologize if that was one of the elements that you went through. I just didn't get it off my list.

*THE COURT:* I think you're right. I may have missed it.

If you were to go to trial, then you would have the right, if you wished, to testify, but you're not compelled to testify. And your silence can't be used against you if you choose not to testify. Do you understand all of that?

*THE DEFENDANT:* Yes, I understand, Your Honor.

*MR. SANDERS:* Thank you, Your Honor.

*THE COURT:* All right. Good. Thank you.

All right. Sir, you've heard the government's attorney summarize the essential provisions of your plea agreement in this case. And your plea agreement has been reduced to writing. I assume you've gone over with your counsel this plea agreement; is that correct?

*THE DEFENDANT:* Yes, that's correct.

*THE COURT:* And have they answered any questions you have about the plea agreement?

*THE DEFENDANT:* Yes, all the questions.

*THE COURT:* All right. And, Mr. Sanders, did he recite the terms of the plea agreement as you understand them?

*THE DEFENDANT:* Yes, I understand them.

1         *THE COURT:*  In other words, that's the agreement that
2    you have with the government, correct?
3         *THE DEFENDANT:*  Yes.  Yes, of course.
4         *THE COURT:*  All right.  Counsel, same?
5         *MR. BEHRE:*  Yes, Your Honor.
6         *THE COURT:*  All right.  So, let me tell you a couple
7    of things about your plea agreement, and I'm sure that your
8    attorneys have probably gone over this with you already.  It's
9    important for you to remember that the plea agreement that you
10   have in this case is with the government in this case and not
11   with me.  And this plea agreement, when it comes time to
12   sentence later on at the sentencing hearing, this plea
13   agreement does not bind me or restrict me in any way when I
14   determine your sentence at the sentencing hearing.  Do you
15   understand that?
16        *THE DEFENDANT:*  I understand, Your Honor.
17        *THE COURT:*  In other words, I will determine your
18   sentence completely independently of this plea agreement.  Do
19   you understand that?
20        *THE DEFENDANT:*  I understand, Your Honor.
21        *THE COURT:*  All right.  And obviously today you're not
22   going to know what your sentence is going to be.  You won't
23   know that until some months later at the sentencing hearing in
24   this case.  And if it turns out that the sentence you receive
25   at the sentencing hearing is longer than you expected to

1   receive, you're not going to be able to come back in here and

2   withdraw your guilty plea on that basis and try and start this

3   process over again.  Do you understand that?

4         *THE DEFENDANT:*  I understand, Your Honor.

5        *THE COURT:*  In other words, what we're doing here

6   today with respect to your plea of guilty is final.  You

7   understand that?

8         *THE DEFENDANT:*  Yes.  Yes.

9        *THE COURT:*  All right.  Now, there are certain things

10   that can affect the length of your sentence in this case.  I

11   don't know if you have a prior criminal history of any kind.

12   But if you did, some of that, depending upon what crimes you

13   may have committed in the past and when they were committed,

14   that could affect the length of your sentence in this case and

15   make it longer.  Do you understand that?

16         *THE DEFENDANT:*  I understand, Your Honor.

17        *THE COURT:*  All right.  Now, in a conspiracy case,

18   such as this one, sometimes as a member of the conspiracy, you

19   can be held responsible for what other members of the

20   conspiracy did in furtherance of the conspiracy that you could

21   reasonably anticipate, even though you didn't do those acts

22   yourself, and that can affect the length of your sentence in

23   this case.  You understand that?

24         *THE DEFENDANT:*  I understand that, Your Honor.

25        *THE COURT:*  All right.  Now, there's also the

possibility that the government may file what's known as a 5K
motion, in which they ask me to give you a lower sentence than
the advisory guidelines would normally recommend, because you
have provided what they believe to be substantial assistance.
Do you understand that?

     *THE DEFENDANT:*  I understand, Your Honor.

     *THE COURT:*  All right.  There are two important things
to remember about that.  Number one, no matter how much
assistance you give to the government, no matter how much you
cooperate with them, testify, that you do whatever they ask you
to do, it's up to the government and the government alone
whether that amounts to substantial assistance and whether they
file this motion in the first place.  Do you understand that?

     *THE DEFENDANT:*  Yes, I understand, Your Honor.

     *THE COURT:*  You cannot force them to do it, and I
can't force them to do it.  It's their decision, their decision
alone.  That's number one.  Number two -- you've got that?

     *THE DEFENDANT:*  Yeah.

     *THE COURT:*  Okay.  Number two, even if the government
files this motion and asks me to give you a lower sentence than
recommended by the advisory guidelines, there is no guarantee
that I'm going to grant that and give you a lower sentence.  Do
you understand that?

     *THE DEFENDANT:*  I understand, Your Honor.

     *THE COURT:*  I may give you a lower sentence, if I

1    agree with the government and they file the motion.  I could

2    give you a lower sentence even if they didn't file the motion.

3    Once I determine -- I'm sure your lawyers have talked to you

4    about the advisory guidelines, correct?

5              *THE DEFENDANT:*  Yes, they told me about it.  Thank

6    you.

7              *THE COURT:*  At the sentencing hearing, the first thing

8    I have to do is determine what the appropriate guideline range

9    is for you under the Federal Sentencing Guidelines, that is,

10   the range of months that are recommended for your sentence

11   under the guidelines.  I have to do that first.  But once I do

12   that, I am not automatically required to give you a sentence

13   within that range of months.  Do you understand that?

14             *THE DEFENDANT:*  I understand, Your Honor.

15             *THE COURT:*  I may decide that that is the appropriate

16   sentence and give you a sentence within that range, but I have

17   the authority to go up from the top of the Sentencing

18   Guidelines range.  In fact, in your case I could go all the way

19   up to five years, which is the statutory maximum for this

20   offense.  Do you understand that?

21             *THE DEFENDANT:*  Yes, I understand, Your Honor.

22             *THE COURT:*  On the other hand, I can also go below the

23   Sentencing Guideline range, if I think that is the appropriate

24   sentence, either because the government has asked me to do so

25   and I agree with them, or because I think it's appropriate even

1  if they don't ask me to do it.  I've got that authority.  You
2  understand that?

3  　　　　*THE DEFENDANT:*  I understand, Your Honor.

4  　　　　*THE COURT:*  All right.  Now, in addition, in your plea
5  agreement there is what we call a waiver of appeal.  That
6  essentially means that if you're unhappy with the result in
7  this case, that you're not going to be able to appeal that to a
8  higher court later on.  You understand that?

9  　　　　*THE DEFENDANT:*  Yes, I understand, Your Honor.

10  　　　　*THE COURT:*  All right.  But if the government's
11  unhappy with the result in this case, they are not giving up
12  their rights to appeal.  They can appeal, and you can't.  Do
13  you understand that?

14  　　　　*THE DEFENDANT:*  Yes, I understand.

15  　　　　*THE COURT:*  All right.  Now, if you plead guilty today
16  and I accept your plea, then your guilt is established and we
17  move to the sentencing process.  And this is a summary of what
18  happens from this point on:  The probation department conducts
19  a presentence investigation, and then they prepare a report to
20  assist me in the sentencing process.  And you can contribute to
21  that report by meeting with the probation department, along
22  with your attorneys, and providing them with information.  The
23  government does the same thing.  And then you see the
24  presentence report before I do, and you can object to any
25  errors that you think it contains.  The government can do the

same thing. And then the probation department writes responses
to any objections that you have raised or that the government
has raised, and then they send the entire packet of information
to me so that I can review it prior to the sentencing hearing.

At the sentencing hearing, everyone comes back to
court, just like we are today, and you and your attorneys will
have an opportunity to speak on your behalf before I determine
the sentence in your case.

Do you understand how the process works?

THE DEFENDANT: Yes, I understand, Your Honor.

THE COURT: All right. And even though I do the
sentencing, I have no idea as I sit here today what sentence
you're likely to receive at the sentencing hearing, because I
do not know how the Federal Sentencing Guidelines are going to
work in your case and I won't know until I have reviewed the
presentence report. But I will decide all disputed factual and
legal issues, then I will determine the appropriate sentencing
guideline range. In doing this, I do not use the beyond a
reasonable doubt standard that a criminal jury would use and
the Rules of Evidence do not apply. The sentencing process is
much more informal than a trial.

All right. Now, one more thing before I can
accept a plea of guilty from you in this case. I have to make
a determination that there is a factual basis for your plea,
and I believe that the factual basis is contained within your

1  plea agreement, probably beginning on page -- there we go, 10.
2  On page 10 of your plea agreement, beginning on that page and
3  proceeding on to page 11 and 12 and on to 13 is what's called
4  the factual basis for your plea.  So I assume that you've gone
5  over this with your attorneys already, correct?

6          *THE DEFENDANT:*  Yes, that's correct, Your Honor.

7          *THE COURT:*  All right.  Well, what I'm going to do now
8  is I'm going to ask the government's lawyer to summarize the
9  facts that he believes the government can prove about you in
10 this case.  And when he finishes, I'm going to ask you if those
11 facts are true.  Do you understand?

12         *THE DEFENDANT:*  I understand, Your Honor.

13         *THE COURT:*  All right.  Mr. Sanders.

14         *MR. SANDERS:*  Your Honor, if this case were to proceed
15 to trial, the government would prove beyond a reasonable doubt
16 that at all relevant times, Businessman 1, a U.S. lawful
17 permanent resident, was the owner of a number of U.S.-based
18 energy companies, including companies based here in the
19 Southern District of Texas, which supplied equipment and
20 services to Petróleos de Venezuela, S.A., known by the acronym
21 PDVSA, which is the Venezuelan state owned and state controlled
22 oil company.

23         And Businessman 2 was the owner of a number of
24 other U.S. and Venezuela-based energy companies that supplied
25 equipment and services to PDVSA and wholly-owned subsidiaries

1  or affiliates thereof.

2             That at all relevant times the defendant was

3  employed by or was working for Businessman 2, including as a

4  salesman for Businessman 2's companies.  Among other things,

5  the defendant's responsibilities included helping obtain

6  business by approaching PDVSA buyers, explaining products or

7  services that were offered by Businessman 2's companies,

8  ensuring that those companies were placed in bidding panels for

9  PDVSA projects and developing relationships with the buyers and

10 their purchasing managers.

11            At Businessman 2's direction, defendant provided

12 a number of things of value to the PDVSA officials, including

13 meals, recreational travel, and entertainment.  They also

14 included offering bribes based on a percentage of any contracts

15 that the officials helped to award to Businessman 2's foreign

16 and U.S.-based energy companies.

17            The defendant was given the authority to offer

18 bribes up to 3 percent of the contract price and subsequently

19 did reach agreements to pay bribes to a number of PDVSA

20 officials on behalf of Businessman 2's companies.

21            One of defendant's duties for Businessman 2 was

22 to keep track of the amounts of bribe payments that were owed

23 to each PDVSA official based upon the contracts that he or she

24 had helped to award to one or more of Businessman 2's

25 companies, and defendant maintained spreadsheets detailing the

contracts awarded and the percentages of the bribe to each bribe -- to each PDVSA official.

Specifically for five separate PDVSA officials, defendant tracked bribes in the 2009 to 2010 time period that totaled $1.6 million, approximately.

In or about 2009, defendant learned that Businessman 1 and Businessman 2 had reached an agreement to work together to pay bribes to PDVSA officials in order to help their various companies win PDVSA projects. And defendant participated in these efforts, including as acting as an agent on behalf of Businessman 1 companies in -- Businessman 1's companies in addition to Businessman 2's companies.

And, for example, in approximately 2010, defendant introduced one PDVSA official, Official B, to Businessman 1 and the defendant helped Official B open a bank account in Panama in 2010 for the purposes of receiving bribes and for which Businessman 1 and Businessman 2 subsequently sent bribe payments to.

THE COURT: Thank you.

Sir, you've heard the government's attorney summarize the facts that he believes the government can prove about you in this case. Are those facts true?

THE DEFENDANT: Yes, they are true.

THE COURT: All right. The Court finds that there is a factual basis for the plea. Let me ask you at this time,

1  sir, what is your plea to the charge against you in Count 1 of

2  the information, guilty or not guilty?

3       *THE DEFENDANT:*  Guilty, Your Honor.

4       *THE COURT:*  Do you state here in court, under oath,

5  that each and every allegation in Count 1 of the information is

6  true and correct?

7       *THE DEFENDANT:*  Yes, Your Honor.

8       *THE COURT:*  And are you making this plea of guilty to

9  Count 1 freely and voluntarily?

10       *THE DEFENDANT:*  Yes, Your Honor.

11       *THE COURT:*  Has anyone forced you, threatened you,

12  coerced you, or done any violence to you or any other person to

13  get you to plead guilty in this case?

14       *THE DEFENDANT:*  No, Your Honor.

15       *THE COURT:*  Are you pleading guilty because of any

16  promise that's been made to you, other than what is contained

17  here in this written plea agreement?

18       *THE DEFENDANT:*  No, Your Honor.

19       *THE COURT:*  Are you pleading guilty to protect someone

20  else?

21       *THE DEFENDANT:*  No, Your Honor.

22       *THE COURT:*  Are you pleading because you are guilty

23  and for no other reason?

24       *THE DEFENDANT:*  Yes, I'm guilty.

25       *THE COURT:*  All right.  Have you read and do you

1  understand the plea agreement in this case?

2  　　　　THE DEFENDANT:  Yes, I read it, and I understand it.

3  　　　　THE COURT:  And are you prepared to sign it under oath

4  at this time?

5  　　　　THE DEFENDANT:  Yes, right now.

6  　　　　THE COURT:  All right.  All right, sir.  I've been

7  handed a written plea agreement in your case, and I want to

8  confirm with you on the record, on page 17 of the plea

9  agreement, is that your signature?

10  　　　　THE DEFENDANT:  Yes, that's my signature.

11  　　　　THE COURT:  And on the last page of the plea

12  agreement, page 20, is that also your signature?

13  　　　　THE DEFENDANT:  Yes, Your Honor.

14  　　　　THE COURT:  Have you executed this plea agreement

15  freely and voluntarily, after having had it fully explained to

16  you to your satisfaction by your attorneys?

17  　　　　THE DEFENDANT:  Yes, Your Honor.

18  　　　　THE COURT:  All right.  Counsel, do you know of any

19  reason why your client should not plead guilty in this case?

20  　　　　MR. BEHRE:  No, Your Honor.

21  　　　　THE COURT:  Do you know of any meritorious defenses he

22  would have to the count to which he is pleading?

23  　　　　MR. BEHRE:  No, Your Honor.

24  　　　　THE COURT:  All right.  Any additional admonishments

25  that you can think of at this point that I need to provide to

1  your client?

2          *MR. BEHRE:*  No, Your Honor.  It's sufficient.

3          *THE COURT:*  All right.  Mr. Sanders?

4          *MR. SANDERS:*  None on behalf of the government, Your

5  Honor.

6          *THE COURT:*  All right.  Thank you.

7                  These are the Court's findings:  I find the

8  defendant is clearly mentally competent and capable of entering

9  an informed plea.  I find the plea is supported by independent

10  facts establishing all of the elements of the offense and that

11  the defendant intended to commit the acts he committed.  I find

12  the defendant's plea of guilty is voluntarily, freely, and

13  knowingly made, and that the defendant understands the nature

14  of these proceedings and the consequences of his plea of

15  guilty, and that this is an informed plea.  Therefore, sir, I

16  accept your plea of guilty and I find you guilty as charged in

17  Count 1 of the information.

18                  As I explained before, a presentence

19  investigation will now be conducted and a report will be

20  prepared to assist me in sentencing.  The sentencing hearing in

21  this case is tentatively set for June the 24th at 11:00 a.m.

22  And I understand that that may -- there may be a motion to

23  continue the sentencing.  We'll see how that goes.  But at

24  least at this point, we're set for the 24th of June at

25  11:00 a.m.

1          Anything else from the government?

2          MR. SANDERS:  Your Honor, I understand the defendant

3  will have some additional paperwork to complete, but if at the

4  conclusion of this proceeding, Your Honor would like a case

5  update on some of the other proceedings, the United States is

6  happy to provide that if you would so desire.

7          THE COURT:  I think that would be useful for me to

8  know what's going on with the other defendants.

9          MR. SANDERS:  Certainly, Your Honor.

10          THE COURT:  Thank you.  I appreciate that.

11          Anything else from the defendant?

12          MR. FINDER:  Nothing else, Judge.  May we be excused

13  to go to the marshal?

14          THE COURT:  You may.  He's got to sign, though, before

15  he leases.  Rhonda has got a --

16          MR. FINDER:  Okay.

17          THE COURT:  Yeah, Rhonda has got a form for him to

18  sign, and then you'll be free to go.  All right.  Thank you.

19          MR. SANDERS:  Thank you, Your Honor.

20      (Concluded at 2:14 p.m.)

21                              * * *

22  I certify that the foregoing is a correct transcript from the
   record of proceedings in the above-entitled cause, to the best
23  of my ability.

24  /s/ *Kathy L. Metzger*                  *6-2-2016*
    Kathy L. Metzger                        Date
25  Official Court Reporter